CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAY 26 2009
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| VINCE GILMER, | ) | Civil Action No. 7:08-cv-00635 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. ROOKER, | ) | By: Hon. Jackson L. Kiser |
|     Defendant. | ) | Senior United States District Judge |

Vince Gilmer, a Virginia prisoner proceeding pro se, filed a civil rights action, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Gilmer names Rooker, a psychiatrist at Bland Farm Correctional Center ("Farm"), in his individual capacity as the sole defendant. Gilmer alleges that Rooker was deliberately indifferent to Gilmer's serious medical need. This matter is before me for screening. After reviewing Gilmer's submissions, I dismiss his complaint for failing to state a claim upon which relief may be granted.

I.

Gilmer alleges the following facts relevant to Rooker. The Virginia Department of Corrections ("VDOC") transferred Gilmer from the Southwest Virginia Regional Jail to the Farm. (Compl. 6.) Gilmer arrived at the Farm while prescribed 40 milligrams per day of Celexia, an SSRI.[1] (Id.) On December 5, 2006, Gilmer met with a mental health care worker for intake screening. The case worker reported that Gilmer said he had atypical anxiety disorder, SSRI withdrawal syndrome ("SSRIWS"), and adult antisocial personality disorder. (Id. at 9, Ex. A.) The case worker referred Gilmer to Rooker, the Farm's psychiatrist, for a medical diagnosis. (Id. at 8.)

---

[1] SSRI stands for "selective serotonin reuptake inhibitors" and are a class of chemical compounds used in antidepressant medications.

Gilmer met Rooker on December 11, 2006. (Id. at 10.) As a psychiatrist, Rooker allegedly should know everything in the American Journal of Psychiatry, which first reported SSRIWS in 1994. (Id. at 11.) However, Rooker pretended to know about SSRIWS, but Rooker erroneously wrote "serotonin withdrawal symptom" in Gilmer's file instead of SSRIWS. (Compl. 13.) Rooker diagnosed Gilmer with anxiety disorder and personality disorder but not SSRIWS. (Id. at 14.) Rooker assured Gilmer that he would receive his pill each day, but Rooker did not write out an explicit order. (Id. at 15.) Consequently, Rooker did not inform the nurses that Gilmer must receive his pill every day. (Id. at 14, 15.)

On December 18, 2006, the morning nurse did not bring Gilmer's pill because his medicine needed to be reordered. (Id. at 16.) Gilmer began to experience SSRIWS, and correctional officers placed Gilmer in segregation. (Id. at 16-19.) The morning nurse gave Gilmer his pill the next morning, allegedly proving that his medicine did not need to be ordered. (Compl. 22.) A nurse did not bring Gilmer his medicine again on January 8, 2007, and Gilmer subsequently experienced SSRIWS. (Id. at 30.)

On January 10, 2007, Gilmer realized that Rooker did not know about SSRIWS. (Id. at 32.) Gilmer submitted a grievance form discussing SSRIWS. (Id.) Gilmer requested an order from Rooker saying that Gilmer cannot miss a dose, he cannot be sent into segregation for experiencing SSRIWS, and an extra pill must be kept in the pill box at all times. (Id. at 35.) The reply to his request stated that the medical staff would monitor him, Rooker did not write an order to ensure that Gilmer received his medicine, and SSRIWS is not noted in his file. (Id.)

Gilmer alleges that Rooker failed to research SSRIWS and disregarded what his patient told him. (Compl. 15.) Gilmer argues that "Rooker was told [Gilmer] had SSRI induced mood

2

disorder with manic features onset with withdrawal, but refused to give me proper treatment. His deliberate indifference was cruel and unusual punishment[,] violating my [Eighth] Amendment rights." (Id. at 38.)

II.

I am required to dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's grounds for relief "requires more than labels and conclusions. . . ." Id. Although I liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon, 574 F.2d at 1151 (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

Gilmer fails to state a claim against Rooker upon which relief may be granted. To state an Eighth Amendment claim for ineffective medical assistance, Gilmer must establish that

3

Rooker acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference occurs when a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). The prisoner must demonstrate that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990). However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. at 104-05; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); see Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

Gilmer, a professed medical doctor, argues that Rooker did not properly diagnose him with SSRIWS because Rooker failed his medical duty to research SSRIWS. (14, 15.) Gilmer acknowledges that Rooker met him, diagnosed him with anxiety and personality disorders, noted that Gilmer alleged serotonin withdrawal syndrome, but did not diagnose him with SSRIWS. Although Gilmer complains about the diagnosis and treatment plan Rooker provided, Gilmer's disagreement about the course of treatment does not give rise to a constitutional claim of deliberate indifference.

4

As for the nurses' conduct, supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the plaintiff's particular constitutional injury. See Shaw v. Stroud, 13 F. 3d 791, 799 (4th Cir. 1994) (citing Miltier, 896 F.2d at 854). Therefore, Gilmer must show that Rooker's inaction amounted to deliberate indifference or tacit authorization of the nurses' alleged offenses. Miltier, 896 F.2d at 854. Gilmer cannot establish supervisory liability merely by alleging that a nurse was deliberately indifferent to Gilmer's needs. See id.

Gilmer cannot successfully hold Rooker liable as a supervisor over the nurses' acts because Gilmer fails to allege any supervisory relationship between the medical nurses and Rooker. Regardless, Gilmer alleges that the nurses lied to their superiors about the intermittent pills he received, precluding any deliberate indifference by a supervisor. Accordingly, Gilmer fails to state a claim against Rooker upon which relief may be granted, and I dismiss his complaint.

III.

For the foregoing reasons, I dismiss Gilmer's complaint for failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Clerk is directed to send copies of this memorandum opinion and the accompanying

order to the plaintiff.

**ENTER**: This 26th day of May, 2009.

                                                                              Senior United States District Judge